**FILED**

MAR - 6 2012

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

POSTED ON WEBSITE

FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA
FRESNO DIVISION

| | | |
|---|---|---|
| In re | ) | Case No. 11-60514-B-13 |
| Shane Dunnaway and Carol Lyn Dunnaway, | ) ) ) | DC No. MHM-1 |
| Debtors. | ) ) | |
| In re | ) | Case No. 11-17278-B-13 |
| Edward Frank Jones, Jr., and Mary Ann Jones, | ) ) ) | DC No. MHM-2 |
| Debtors. | ) ) | |
| In re | ) | Case No. 11-61974-B-13 |
| David Ray Brown and Erin Rose Brown, | ) ) ) | DC No. MHM-1 |
| Debtors. | ) ) | |
| In re | ) | Case No. 11-61580-B-13 |
| Grant Edgar Southwell, | ) ) | DC No. MHM-1 |
| Debtor. | ) ) | |

**MEMORANDUM DECISION REGARDING TRUSTEE'S
OBJECTION TO EXEMPTIONS**

Sarah R. Velasco, Esq., appeared on behalf of the chapter 13 trustee, Michael H. Meyer, Esq.

Patrick Kavanagh, Esq., appeared on behalf of the debtors, Shane and Carol Dunnaway, Edward and Mary Jones, David and Erin Brown, and Grant Southwell.

Before the court are four identical objections to debtors' claimed exemptions filed by the chapter 13 trustee, Michael H. Meyer, Esq. (the "Trustee") in the above-referenced cases (collectively, the "Objection"). The Trustee objects to the fact that the debtors have attempted to exempt their interest in one or more firearms as either "household goods" or "ordinarily and reasonably necessary personal property" (collectively, "household property") under the applicable provisions of California law. The Trustee requests a ruling that essentially prohibits the exemption of *all* firearms as "household property." For the reasons set forth below, the Objection will be overruled.

This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this contested matter by Federal Rules of Bankruptcy Procedure 7052 and 9014(c).[1] The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. § 522, and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

**Background and Findings of Fact.**

**Shane & Carol Dunnaway.** Shane and Carol Dunnaway (the "Dunnaways") listed two firearms with an aggregate value of $800 on line 8 of Schedule B in the category of "Firearms and sports, photographic, and other hobby equipment." The firearms are located at the Dunnaways' residence. They claimed an exemption for their interest in the firearms

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated *after* October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (enacted April 20, 2005).

pursuant to § 703.140(b)(3) of the California Code of Civil Procedure ("C.C.P.") on Schedule C. These two firearms are described as a "Ruger rifle M77-270" valued at $500 and a "Glock 40 mag handgun" valued at $300. The Trustee does not object to the value of the firearms, only to their categorization as "household property."

In response to the Trustee's Objection, the Dunnaways filed separate declarations to explain their personal use of the firearms for home protection and for obtaining food. The Dunnaways live in the town of Olancha in Inyo County, a rural area in which, according to the Dunnaways, there are persistent problems with transients and marijuana cultivation. The closest law enforcement station is located 50 to 60 miles away. Carol Dunnaway keeps the handgun for protection while her husband is away working in Los Angeles.

Shane Dunnaway uses the rifle for hunting to supplement his family's food supply. In the past, he has hunted deer, qual, chukar, and duck, and he consumes the meat. He states that other members of the Olancha community own rifles for hunting and handguns for self-protection.

**Edward & Mary Jones.** Edward and Mary Jones (the "Joneses") listed four firearms with an aggregate value of $1,000 on line 8 of Schedule B. The firearms are located at the Joneses' address of record in the city of Bakersfield. They claimed an exemption for their interest in the firearms pursuant to C.C.P. § 703.140(b)(3) on Schedule C. These four firearms are described as a "Phoenix Arms 22 pistol," a "Winchester 12 gauge firearm," a "7 mm Springfield firearm," and a "Phoenix Arms 380 firearm."

In response to the Trustee's Objection, Edward Jones filed a declaration explaining that he uses the rifles (without specifying which ones) for hunting deer to supplement his food supply. He is a veteran of the

Vietnam War and states that "guns have always been a part of [his] life."

**David & Erin Brown.** David and Erin Brown (the "Browns") listed one firearm, a "Beretta Nova 12 gauge shotgun," with a value of $450 on line 8 of Schedule B and exempted it on Schedule C pursuant to C.C.P. § 703.140(b)(3). The firearm is located at the Browns' residence.

In response to the Trustee's objection, David Brown filed a declaration to explain that he uses the shotgun for hunting birds, particularly quail, ducks, geese, and chukar, to supplement his food supply. The Browns live in rural Inyo County in the town of Bishop. According to David Brown, it is common for members of the Bishop community to own firearms and use them for hunting.

**Grant Southwell.** Grant Southwell ("Southwell") listed two firearms with an aggregate value of $445 on line 8 of Schedule B and claimed an exemption on Schedule C for his interest in the firearms pursuant to C.C.P. § 740.020. These two firearms are described as a "Remington 870 Express Mag 12 Gauge Shotgun" valued at $220 and a "Ruger Black Hawk 357 Firearm" valued at $225. Southwell resides in the city of Bakersfield. He filed a response to the Trustee's Objection but did not attach a declaration to address the location, use, and purpose of his firearms.

**Issues Presented.**

In each of the four cases, the Trustee argues that the California exemption scheme does not permit the exemption of any firearm under either C.C.P. § 703.140(b)(3) or § 704.020. The Trustee has not objected to the exemptions based on the value or use of the firearms. He also has not presented any evidence to rebut the debtors' declarations or to support his contention regarding the characterization of firearms as something other than "household property." Rather, the Trustee invites the court to make a

ruling that firearms, *per se*, cannot be included in "household property" exemptible under the above statutes.

**Analysis and Conclusions of Law.**

    **California Exemptions.** Section 522 of the Bankruptcy Code allows individual debtors to exempt an interest in certain items of personal property from the bankruptcy estate. *See* § 522(b)(1). While the Code includes a federal exemption scheme under § 522(d), it also permits the states to opt out of the federal scheme and provide their own exemptions for debtors in bankruptcy. *See* § 522(b)(2). California is one of the states that has chosen to opt out. *See* C.C.P. §§ 703.130, 703.140; *see also In re Talmadge*, 832 F.2d 1120, 1122–23 (9th Cir. 1987). An individual debtor in bankruptcy in California may choose between two mutually exclusive sets of state exemptions, one for debtors generally and another specifically for debtors in bankruptcy. *In re McKown*, 203 F.3d 1188, 1189 (9th Cir. 2000); *see also* C.C.P. § 703.140(a).

    The rules that govern the exemption of property in California are found in C.C.P. §§ 703.010–704.995. The general exemption statute applicable here is C.C.P. § 704.020, which provides, in pertinent part:

> (a) *Household furnishings*, appliances, provisions, wearing apparel, and *other personal effects* are exempt in the following cases:
>
>     (1) If ordinarily and reasonably necessary to, and personally used or procured for use by, the judgment debtor and members of the judgment debtor's family at the judgment debtor's principal place of residence.

C.C.P. § 704.020 (emphasis added).

Alternatively, the bankruptcy-specific exemptions are found in C.C.P. § 703.140(b). Under the applicable subsection, a debtor is allowed to exempt his or her

> interest, not to exceed [$550] in value in any particular item, in *household furnishings, household goods*, wearing apparel, appliances, books, animals, crops, or musical instruments, that

5

> are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor.

C.C.P. § 703.140(b)(3) (emphasis added).

Here, the Dunnaways, the Joneses, and the Browns have elected to exempt their firearms as "household furnishings" or "household goods" under C.C.P. § 703.140(b)(3). In contrast, Southwell has elected to exempt his firearms as "ordinarily and reasonably necessary personal property" under C.C.P. § 704.020. Although the two exemption statutes vary slightly in their wording, the analysis of each statute is essentially the same. The two sets of exemptions are intended to be mutually exclusive; however, the expanded description of property in C.C.P. § 704.020 may nevertheless be applied to interpret the terms used in C.C.P. § 703.140(b). *See In re Thornton*, 91 B.R. 913, 915 (Bankr. C.D. Cal. 1988).

**Burden of Proof.** It is well accepted in the Ninth Circuit that a claimed exemption is presumptively valid. *In re Carter*, 182 F.3d 1027, 1029 n.3 (9th Cir. 1999) (citations omitted). Once the exemption has been claimed and an objection has been raised, "the objecting party has the burden of proving that the exemptions are not properly claimed." FED. R. BANKR. P. 4003(c); *In re Davis*, 323 B.R. 732, 736 (9th Cir. BAP 2005). This means that the objecting party not only has the burden of producing evidence rebutting the presumptively valid exemption but also the ultimate burden of persuasion. *Carter*, 182 F.3d at 1029 n.3. So even if the presumption of validity is rebutted with evidence from the objecting party forcing the debtor to come forward with unequivocal evidence to support the claimed exemption, "[t]he burden of persuasion . . . always remains with the objecting party." *Id.* Here, the Trustee, as the party objecting to the debtors' exemptions, has the burden of production and persuasion to prove that the debtors improperly exempted their firearms.

6

**Exemption of Firearms.** The question of what property a debtor may exempt is determined by state, not federal, law. *See In re Herman*, 120 B.R. 127, 129 (9th Cir. BAP 1990) (citing *Thornton*, 91 B.R. at 914); *see also In re Eveland*, 87 B.R. 117, 121 (Bankr. E.D. Cal. 1988) (stating that the issue of which liens may be avoided under § 522(f), in contrast, is a question of *federal* law). The validity of a debtor's state exemption claim is controlled by California law and by California's rules of construction. *In re Goldman*, 70 F.3d 1028, 1029 (9th Cir. 1995) (per curiam) (citing *In re Anderson*, 824 F.2d 754, 756 (9th Cir. 1987)). One basic rule of statutory construction requires California courts to "'give effect to statutes according to the usual, ordinary import of the language employed in framing them.'" *Id.* (quoting *Cal. Teachers Ass'n v. San Diego Cmty. Coll. Dist.*, 28 Cal. 3d 692, 698 (1981)).

Yet, under California law, statutes should also be interpreted in light of their purposes, rather than construed mechanically. *In re Reaves*, 256 B.R. 306, 310 (9th Cir. BAP 2000) (citing *S.F. Found. v. Superior Court*, 37 Cal. 3d 285, 297 (1984)), *aff'd*, 285 F.3d 1152 (9th Cir. 2002). The California exemption statutes are to be liberally construed, as their manifest purpose is to "'sav[e] debtors and their families from want by reason of misfortune or improvidence.'" *In re Turner*, 186 B.R. 108, 113 (9th Cir. BAP 1995) (quoting *In re Crosby's Estate*, 2 Cal. 2d 470, 473 (1935)).

With these principles in mind, this court must determine whether the debtors' firearms qualify as "household property" meaning they are "held primarily for the personal, family, or household use of the debtor[s]" under C.C.P. § 703.140(b)(3) or are "ordinarily and reasonably necessary to, and personally used or procured for use by" the debtors at their principal place of residence under C.C.P. § 704.020.

The Ninth Circuit Bankruptcy Appellate Panel's ("BAP") decision in

*In re Lucas*, 77 B.R. 242 (9th Cir. BAP 1987), is the leading appellate case in this Circuit on what may constitute "household goods" under C.C.P. § 703.140(b)(3). There, the BAP held that the debtors could exempt their golf clubs, camera equipment, exercise bike, and decorative figurines as household property. *Id.* at 245–46. In reaching this conclusion, the panel relied on a number of factors. *Id.* at 245.

First, the BAP noted that the California exemption statutes do not explicitly define "household furnishings" or "household goods," so it looked to C.C.P. § 704.020, the state's general exemption statute, for guidance. *Id.* Section 704.020 begins by allowing the exemption of "household furnishings"[2] that are ordinarily and reasonably necessary to and personally used by the debtor. The statute then offers the following definition:

> (b) In determining whether an item of property is "ordinarily and reasonably necessary" under [§ 704.020(a)], the court shall take into account both of the following:
>
> (1) The extent to which the particular type of item is ordinarily found in a household.
>
> (2) Whether the particular item has extraordinary value as compared to the value of items of the same type found in other households.

C.C.P. § 704.020(b).

---

[2] The court notes that C.C.P. § 703.140(b)(3) refers to both "household furnishings" and "household goods" while C.C.P. § 704.020 refers only to "household furnishings" and fails to mention "household goods." The court views the omission of "household goods" from the latter statute as a "distinction without a difference" since the former provision was modeled almost identically to former § 522(d) of the Bankruptcy Code. *See In re Steward*, 227 B.R. 895, 898 (9th Cir. BAP 1998) (citations omitted); *compare* C.C.P. § 703.140(b), *with* 11 U.S.C. § 522(d) (1982), *amended by* Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333. Further, there is no reason why the term "other personal effects" in C.C.P. § 704.020 could not include the omitted "household goods."

8

Secondly, the BAP looked at decisions of California courts faced with this similar issue. *Lucas*, 77 B.R. at 245. Those courts have considered "the station in life of the owner and the manner of comfortable living to which he has become accustomed." *Id.* (internal quotation marks omitted) (citing *Independence Bank v. Heller*, 275 Cal. App. 2d 84, 87 (1969); *Newport Nat'l Bank v. Adair*, 2 Cal. App. 3d 1043, 1046 (1969)). The panel then considered the debtors' status in life and the important recreational value of the disputed property. *Id.* Finally, the panel recognized the principle that exemptions ought to be liberally construed in favor of the debtors. *Id.* (citing *In re Ageton*, 14 B.R. 833, 836 (9th Cir. BAP 1981)). Given these factors, the BAP held that the debtors could exempt their golf clubs, camera equipment, exercise bike, and decorative figurines as household property under C.C.P. § 703.140(b)(3). *Id.* at 245–46.

Using *Lucas* as a backdrop, two trial court decisions from this circuit have, to some extent, addressed the firearms exemption issue. In the first case, *In re Eveland*, the bankruptcy court considered the debtors' motion to avoid a non-possessory, non-purchase money lien against some firearms under § 522(f). 87 B.R. at 119. While the court did not decide what property was exempt under state law, it nevertheless applied *Lucas*'s analysis of the debtors' station in life and manner of living to determine the scope of the lien avoidance power. *Id.* at 121. It concluded that firearms would not be exempt as household property under the rationale of *Lucas*, but noted that firearms might be exemptible as tools of the trade for a law enforcement officer. *Id.* The court ultimately held that the debtors could not avoid the lien on their firearms since they could not claim an exemption in the firearms. *Id.*

9

This court declines to follow *Eveland* for two reasons. First, it dealt with the issue of lien avoidance, which is a question of uniform federal law, rather than the issue of exempt property, which is a function of state law. Second, the *Eveland* court based its holding on the observation that California law, through amendments to its exemption statutes, no longer expressly provides for the exemption of firearms. *Id.* The court looked first to the language in former C.C.P. § 690.1 which was repealed in 1982. *Id.* at 121 n.5. This exemption statute did allow specifically the exemption of "one shotgun and the rifle," providing that:

> Necessary household furnishings and appliances and wearing apparel, ordinarily and reasonably necessary to, and personally used by, the debtor and his resident family, *including, but not limited to*, one piano; one radio and one television receiver; provisions and fuel actually provided for the debtor and his resident family's use, sufficient for three months; *one shotgun and one rifle*. Works of art shall not be exempt unless of or by the debtor and his resident family.

C.C.P. § 690.1 (West Supp. 1981) (emphasis added), *repealed by* Cal. Stat. 1982, ch. 1364, § 1, at 5070 (1982) (operative on July 1, 1983).

Former C.C.P. § 690.1 was subsequently superseded by the now familiar C.C.P. § 704.020. *See* 16 CAL. LAW REVISION COMM'N REPORTS 1867 (1982). Unlike its predecessor, the current statute is not restrained to a specific list of household items. Instead, the current statute is much broader in its description of the exemptions; it allows *generally* for the exemption of "[h]ousehold furnishings, appliances, provisions, wearing apparel, and other personal effects," without limiting that field to specific items of personal property. C.C.P. § 704.020(a). In contrast to the language of former C.C.P. § 690.1, the only limitation under the current statute is that the exempted household items be "ordinarily and reasonably necessary to, and personally used" by the debtor or the members of his or her family. *Id.*

Deletion of the itemized list from the current statute cannot be construed as a sign of the California legislature's intent to categorically disallow the exemption of the now omitted items, including "one shotgun and one rifle." The current statute did not only eliminate "one shotgun and one rifle" from the list, it also deleted reference to "one radio and one television receiver." This could hardly mean that the California legislature intended to prohibit debtors from exempting their radios and televisions. By deleting the statutory list from former C.C.P. § 690.1 and broadly describing "household furnishings" in the new C.C.P. § 704.020, it appears that the California legislature intended to expand, not constrict, the scope of the exemption statute to address the evolving nature of what today may be considered ordinarily and reasonably necessary items in a household.

In *In re Thornton*, the bankruptcy court held that the debtor's seven antique rifles did not qualify as exempt "household furnishings" or "household goods" under C.C.P. § 703.140(b). 91 B.R. at 916. In coming to this conclusion, the court also looked to *Lucas*, stating that "[o]wning firearms no longer has anything to do with one's station in life and manner of living; they have been replaced by other goods which are essential to the 'fresh start' philosophy." *Id.* It considered "answering machines, VCRs, stereos, and computers" as examples of personal property that "make it possible for a debtor to quickly reestablish and make a fresh start in our society." *Id.* Under the trial court's theory that firearms should no longer be considered reasonably necessary household furnishings, the debtor was not permitted to avoid the liens against his antique firearms. *Id.* at 915.

Although *Thornton*, like *Eveland*, barred the debtor from exempting his firearms, this court also declines to follow *Thornton* for several reasons. First, the Trustee relies too heavily on the *Thornton* court's suggestion that a firearm can serve no useful function in today's households. The Trustee

focuses specifically on the court's statement that "[i]n our modern urban, industrial, technological and service oriented society, firearms are not usually considered reasonably necessary household furnishings as they would have been 100 years ago on the frontier" and that "[o]wning firearms no longer has anything to do with one's station in life and manner of living." *Id.* at 915-16. This passage appears to be merely a statement of the *Thornton* court's personal view of firearms, rather than a specific finding of fact based on proffered evidence. The objecting creditor in *Thornton* offered no evidence to support the court's comments.[3]

Further, the *Thornton* court itself noted that the "list of exempt [personal] property [under California law] continues to expand." *Id.* at 915. Yet, the court still summarily excluded the subject firearms from inclusion on that list. By doing so, like *Eveland*, the *Thornton* court failed to consider the fact that former C.C.P. § 690.1 was repealed and replaced with a broader, more flexible exemption statute in C.C.P. § 704.020.

Lastly, the facts and resulting analysis of *Thornton* are distinguishable from the cases before this court. The *Thornton* court noted that the debtor used the antique firearms exclusively "for display or conversation purposes just like a painting or [decorative] figurine." *Id.* At the same time, the court made a point of specifically acknowledging that its case "[did] not involve the use of these rifles for protection or to procure food for the table." *Id.* Even the California courts have recognized, for the purpose of claiming exemptions, that a debtor's use of household items cannot be "purely ornamental" but must "serve some useful purpose." *Independence Bank*, 275 Cal. App. 2d at 89. *But see Lucas*, 77 B.R. at 246

---

[3]The creditor in *Thornton* offered expert testimony only regarding the value of the firearms based on their age and condition. 91 B.R. at 915–16.

12

(concluding that decorative figurines were analogous to paintings but were nonetheless exemptible as household property). It follows then that the result in *Thornton* might have been different if the facts had shown that the debtor used the firearms for a useful purpose, such as home protection or the procuring of food.

     While the Trustee argues for a *per se* rule prohibiting the exemption of firearms as "household property," such a rule would ignore the BAP's analysis in *Lucas* and would fail to acknowledge the breadth and flexibility of the relevant California exemption statutes. There is no reason why firearms of moderate value, owned and used for hunting, protection, or general recreational purposes cannot exist in the same category as golf clubs, camera equipment, and an exercise bike. *See id.* at 245. Moreover, in light of the "liberal construction" policy applicable in general to California exemptions, and the "presumption of validity" applicable to the exercise of those exemptions in a bankruptcy context, it is not the debtors' burden to prove that their firearms do satisfy some specific set of criteria to be eligible for exemption. Rather, it is the Trustee's burden to make at least a *prima facie* factual showing why the firearms should not qualify as "household property" within the meaning of the exemption statutes. If the Trustee were to make that showing, then the court would have to look to the debtor's specific circumstances to determine whether use of a firearm contributes to the debtor's station in life and manner of living, as suggested by *Lucas*.

     This inquiry would require the court to consider several factors, including, but not limited to, the debtor's personal use and purpose for keeping the firearm(s), any potential recreational value for the firearm(s), the reasonable necessity of the firearm(s), and the local community standards. Such use does not necessarily have to be for survival but may be

13

for recreational purposes as well, as long as use of the firearm "permit[s] debtors to physically and mentally 'recharge their batteries' thereby improving both their performance and contribution to society and themselves." *Thornton*, 91 B.R. at 916; *see also Lucas*, 77 B.R. at 245 (considering the "manner of *comfortable* living to which [the debtor] *has become accustomed*" (emphasis added)).

The court should also consider whether the firearm is reasonably necessary to the debtor. The term "reasonably necessary" is not meant to be defined as "indispensable." *See Independence Bank*, 275 Cal. App. 2d at 88. Additionally, reasonable necessity should not limit a debtor to only the bare essentials necessary for survival. *See In re Frazier*, 104 B.R. 255, 260 (Bankr. N.D. Cal. 1989) (allowing debtor to exempt two, rather than one, televisions). At the same time, the court cannot allow a debtor to abuse the California exemption scheme by claiming an exemption in luxury items. *Id.*

Lastly, evidence regarding the general custom and practice in the debtor's community may also be relevant to the inquiry. This would provide the court with information to show whether a firearm is "ordinarily found in a household" within the debtor's community, and may support a finding that the debtor's use and ownership of a firearm is ordinary and reasonable under the circumstances.

Here, all of the debtors except Southwell have offered evidence to support a finding that their ownership and use of firearms are reasonable, necessary, and consistent with their station in life, and contribute to their recreation, survival, and/or protection. The Trustee has not provided any evidence to rebut the debtors' declarations. Given that the Trustee, as the objecting party, has the ultimate burden of persuasion, the court is not persuaded that the Dunnaways, Joneses and Browns improperly exempted their interest in the firearms under C.C.P. § 703.140(b)(3).

Turning now to Southwell's exemption, Southwell did not offer a declaration to explain his use of the two firearms he valued at $445. Likewise, the Trustee offers no evidence to rebut the presumption that Southwell's exemption is valid. Given the fact that all of the debtors are represented by the same attorney, the court can infer that a declaration from Southwell would have offered essentially the same facts as those of the other debtors. The value of Southwell's firearms is not extraordinary. There is nothing in the description of the firearms, one shotgun and one pistol, to suggest that they too are not generally used for hunting, protection, and/or recreation. The Trustee has not carried his burden to show that Southwell's exemption of the firearms is inappropriate under C.C.P. § 704.020.

**Conclusion.**

Based on the foregoing, the court finds and concludes that the debtors' exemption of firearms as "household property" in each of the above cases is presumptively valid. The Trustee has not sustained his burden of proof to show otherwise. The fact that firearms are not expressly enumerated for inclusion in the applicable California exemption statutes does not lead to the conclusion that firearms must be excluded. The Trustee's Objection to the debtors' exemption of firearms under C.C.P. §§ 703.140(b)(3) and 704.020 will be overruled.

Dated: March 6, 2012

W. Richard Lee
United States Bankruptcy Judge